THE STATE, EX REL. FINEGOLD, *v.* BOARD OF COUNTY COMMRS. OF LORAIN CO.

(Decided April 20, 1928.)

*Mr. H. C. Johnson, Messrs. Squire, Sanders & Dempsey* and *Mr. W. L. Fleming,* for plaintiff.

*Messrs. Baird, Vandemark & Butler,* for defendant.

PARDEE, J. The original action started in the court of common pleas by the relator as a taxpayer of Lorain county, for and on behalf of said county, after demand upon and refusal by the prosecuting attorney of that county to bring a similar action, was brought under favor of Sections 2921 and 2922 of the General Code.

The plaintiff seeks a perpetual injunction to enjoin and restrain the defendant from issuing notes and bonds for, or doing anything further regarding, the improvement known as the Lorain Memorial Bridge, under the legislation recently passed by the board of county commissioners.

The case was tried in the court of common pleas and in this court substantially upon the allegations of the petition and the admissions contained in the answer. The facts gathered from said pleadings and the admissions in open court are substantially the following:

On August 30, 1926, the defendant adopted a resolution declaring the necessity of building a bridge over Black river in the city of Lorain, and further declaring that it was necessary to issue bonds in the

sum of $2,199,000 and to submit the policy of such an expenditure to the electors of said county at the next general election, to be held on November 2, 1926. Notice of such an election was published in *two* newspapers of general circulation in said county for two weeks preceding the date of such election. The form of the ballot submitted to the electors and used by them is the following, to wit:

"Lorain County Memorial Bridge and Viaduct Resolution.

"Ballot.

"In favor of the expenditure of $2,199,000 for the purpose of building a bridge over Black river from Broadway at 14th street, in the city of Lorain, to a point approximately opposite the same and to connect with a county road known as Colorado avenue, together with such approaches as may be necessary at the westerly end thereof, paralleling and connecting with Broadway.

"Against the expenditure of $2,199,000 for the purpose of building a bridge over Black river from Broadway at 14th street, in the city of Lorain, to a point approximately opposite the same and to connect with a county road known as Colorado avenue, together with such approaches as may be necessary at the westerly end thereof, paralleling and connecting with Broadway."

The canvass of the result of such election showed that 10,075 votes were cast in favor of the proposition, and 8,797 votes were cast against the same; this showing that more than 50 per cent of the votes favored the proposition, but that less than 55 per cent were in favor thereof.

It is conceded by the defendant that the proceed-

ings for such election were taken under Sections 5638 and 5639-1 to 5642-1, inclusive, of the General Code, which have since been repealed (112 Ohio Laws, 385), but which were then as follows:

"Sec. 5638. The county commissioners shall not levy a tax, appropriate money or issue bonds for the purpose of building; * * * or for building a county bridge, the expense of which will exceed $18,000, except in case of casualty, and as hereinafter provided; * * * without first submitting to the voters of the county, the question as to the policy of making such expenditure."

"Sec. 5639-1. When the board of county commissioners desires to submit such question to the voters of the county, it shall pass and enter upon its minutes a resolution declaring the necessity of such expenditure, fixing the amount of bonds to be issued, if any, in connection therewith, and fixing the date upon which the question of making any such expenditure shall be so submitted, and shall cause a copy of such resolution to be certified to the deputy state supervisors of elections of the county * * *. The county commissioners shall give fifteen days' notice of the submission of any such question by publication in at least two newspapers of opposite politics having a general circulation in said county, which notice shall be published once a week for two consecutive weeks, and shall state the amount of such proposed expenditure, the amount of the bonds, if any, to be issued in connection therewith, the purpose for which such expenditure is to be made, and the time of holding such election."

"Sec. 5640-1. The ballots provided by the deputy state supervisors shall have printed upon the same

the words, 'In favor of the expenditure of $———
for the purpose of ———' and 'Against the expenditure of $——— for the purpose of ———,' said blanks to be filled with the amount proposed to be expended and the purpose for which said money is to be expended.''

"Sec. 5642-1. * * * If a majority of the votes cast are in favor of the proposed expenditure, the board of county commissioners shall proceed to issue bonds in any sum not exceeding the amount stated upon said ballots, * * * and said board shall levy such amount of tax as may be necessary to pay the interest accruing on said bonds and to redeem them at maturity.''

In 1925 the General Assembly of this state adopted the so-called Kreuger Act, being Sections 5649-9 to 5649-9*d*, inclusive, General Code, which law became effective July 20, 1925, and is found in 111 Ohio Laws at page 335.

It is claimed by the attorneys for the plaintiff, and admitted by the attorneys for the defendant, that the proceedings taken by the county commissioners and the other public authorities of said county precedent to the submission of said bond issue to the people of Lorain county did not comply with the requirements of the so-called Kreuger Act.

Sections 5649-9*a*, 5649-9*b*, and 5649-9*c*, a part of the Kreuger Act, read in part as follows:

"Sec. 5649-9*a*. The bond-issuing authority of *any* political subdivision may elect to submit any bond issue authorized by law to vote of the people. In such case and *in every case* on which said bond issuing authority is *required* to submit any bond issue to vote of the people, they *shall* pass a reso-

lution which *shall* set forth the necessity of such bond issue, its purpose, amount and approximate maturities, and of the levy of a tax outside of the limitations of Section 5649-5*b* of the General Code, and all other limitations upon tax rates prescribed by law, to pay the interest on and to retire the said bonds. Said resolution *shall* also state approximately the dates and maturities of the bonds to be issued. They shall certify such resolution to the county auditor at least sixty days prior to the November election at which it is desired to submit such question. Thereupon and more than fifty days prior to such November election the county auditor shall calculate the average annual levy throughout the life of the bonds which will be required to pay the interest on and retire such bonds, assuming that the amount of the tax list of such subdivision remains the same throughout the life of said bonds as the amount of the list for the current year, and if this is not determined, the estimated amount submitted by the auditor to the county budget commission. The auditor shall, not less than fifty days prior to such November election certify the amount of such average to the bond-issuing authority submitting the same. Thereupon the said authority, if it desires to proceed with the issue of said bonds, shall more than forty days prior to such November election, certify its resolution, together with the amount of the average tax levy estimated by the county auditor and the maximum number of years required to retire the bonds, to the deputy state supervisors of elections of the county. * * *

"Sec. 5649-9*b*. * * * Notice of the election shall be published in one or more newspapers printed

and of general circulation in the subdivision once a week for *four* consecutive weeks prior thereto stating the amount of the proposed bond issue, the purpose for which it is to be issued, and the maximum number of years during which such bonds shall run, and the estimated average additional rate outside of the limitations of Section 5649-5*b as certified by the county auditor*. If no newspaper of general circulation is printed in said subdivision, the notice shall be posted in two conspicuous places therein at least thirty days prior to the election and published once a week for four consecutive weeks in one or more newspapers of general circulation in the district.

"Sec. 5649-9*c*. The form of the ballots cast at such election shall be as follows:

" 'For an issue of bonds by the ——— for the purpose of ——— in the sum of ——— and a levy of taxes outside of existing limitations estimated by the county auditor to average ——— mills for a maximum period of ——— years to pay the principal and interest on such bonds. Yes.'

" 'For an issue of bonds by the ——— for the purpose of ——— in the sum of ——— and a levy of taxes outside of existing limitations estimated by the county auditor to average ——— mills for a maximum period of ——— years to pay the principal and interest on such bonds. No.'

"If *fifty-five* per cent of those voting upon the proposition vote in favor thereof, the taxing authorities of such district shall have the authority to proceed with the issue of such bonds, and the levy of a tax sufficient to pay the interest and retirement levies on such bonds outside of the limitations of

Section 5649-5*b* and all other limitations upon tax rates prescribed by law during the life of the bonds in the manner provided by law. * * *''

It being admitted that the procedure adopted by the public authorities for the issuance of the bonds in question did not comply in any particular with the foregoing requirements of the Kreuger Act, it admittedly follows that, if the provisions of the Kreuger Act apply, then the bonds in question cannot be legally issued.

Section 5649-9*d* is a part of the Kreuger Act, and in that section it is provided:

''* * * The provisions of Sections 2 [Section 5649-9*a*, General Code], 3 [Section 5649-9*b*], 4 [Section 5649-9*c*] and 5 [Section 5649-9*d*] of this act * * * shall supersede the various provisions of law governing the issue of bonds of any bond-issuing authority, the passage of resolutions, the publication of notices, the holding of elections, the form of the ballot, the percentage of vote required, the time of holding elections and the levy of taxes, in so far as they are inconsistent herewith.''

When the Legislature declared in plain language that the procedure set forth in the Kreuger Law should supersede the procedure inconsistent therewith provided by other laws for the issuance of bonds, it in effect repealed such other laws, not by implication, but by express enactment; and hence the question of whether the law under which the commissioners acted was repealed by implication is, not presented for determination.

''Yet, where a statute contemplates in express terms that its enactments will repeal earlier acts, by their inconsistency with them, the chief argument

or objection against repeal by implication is removed, and the earlier acts may be more readily treated as repealed." Endlich on the Interpretation of Statutes, Section 206, p. 275.

See, also, 1 Lewis' Sutherland, Statutory Construction (2d Ed.), pp. 458, 459, Section 246.

As hereinbefore quoted, the Kreuger Act (Section 5649-9a) provides that, in every case in which a bond-issuing authority is required to submit any bond issue to the people for their approval or rejection, it *shall* comply with the Kreuger Act. The machinery set up in the Kreuger Act applied, at the time in question, to all bond issues submitted to a vote of the people, whether the tax for such bonds, taken in connection with the other taxes within the statutory limitations, exceeded said limitations or not. The proposed bond issue in the case at bar was required (Section 5638) to be submitted to a vote of the people, and therefore, by the express requirements of the Kreuger Act, the county commissioners were required to follow the procedure set forth in that act.

The county commissioners have only such authority in this matter as is given to them by the General Assembly; and, in order to make their acts valid and binding, they are required to comply with all of the conditions precedent prescribed by the General Assembly; and, it being admitted in this case that they failed to comply with the provisions of the Kreuger Act, the procedure of which law we hold governs them in making this improvement, they have no right to issue and sell the bonds in question, and it therefore becomes our duty to sustain the prayer

of the petition and enjoin the defendant from selling said bonds.

*Decree for plaintiff.*

WASHBURN, P. J., and FUNK, J., concur.